IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| CODE REBEL CORPORATION, | : | Case No. 16-11236 (BLS) |
| | : | Hearing Date: June 14, 2017 at 9:00 a.m. |
| Debtor. | : | Objection Deadline: June 7, 2017 at 4:00 p.m. |
| | : | |

**TRUSTEE'S MOTION FOR APPROVAL OF SETTLEMENT BETWEEN
AND AMONG TRUSTEE, FORMER DIRECTORS AND OFFICERS OF
DEBTOR, AND CERTAIN PLAINTIFFS**

Jeoffrey L. Burtch, as chapter 7 trustee (the "Trustee") for the estate (the "Estate") of the above-captioned debtor (the "Debtor"), hereby moves for entry of an order approving a certain settlement between and among the Trustee, certain former directors and officers of the Debtor, and the plaintiffs in certain pending putative class action suits, and states as follows:

**Jurisdiction, Core Nature, And Venue**

1. The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §1334. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

**Background**

2. On May 18, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the Bankruptcy Court. Prior to the Petition Date, Reid Dabney, Arben Kryeziu n/k/a Arben Kane, David Dwelle, James Canton, and Volodymyr Bykov (together, the "Settling Defendants") each served as an officer and/or director of the Debtor.

3. The Debtor owns a Lloyd's Advance Boardroom and Company Protection Policy, designated as policy number B1230FC02999A15, issued by Certain Underwriters at Lloyd's,

London ("Lloyds"), under which the Debtor and the Settling Defendants are insureds (the "Policy"). The Policy provides $3 million in coverage.

4. In accordance with his duties under the Bankruptcy Code, the Trustee investigated the Estate's potential causes of action against the Settling Defendants for breaches of fiduciary duty, equitable subordination, disgorgement of improperly received funds from the Estate, and fraudulent and preferential transfers. By letter dated July 15, 2016, the Trustee informed the Settling Defendants that he intends to assert certain claims against the Settling Defendants on behalf of the Estate, including but not limited to alleged breaches of the duties of loyalty and/or care, breaches of fiduciary duty, neglect of duties, abdication of duties, errors, misstatements and/or materially inaccurate statements, lack of good faith, the failure to act and/or state material facts known to the Settling Defendants when such statements were necessary, and/or the failure to implement or otherwise follow adequate safeguards and controls (the "Trustee Claims").

5. Prior to the Petition Date, the following putative class action suits (together, the "Securities Class Actions") were filed against the Settling Defendants alleging violations of: Sections 11, 12(a)(2) and 15 of the Securities Act of 1933; Section 10(b) of the Securities Exchange Act of 1934, and Rule 10(b)(5) promulgated thereunder; and Section 20(a) of the Securities Exchange Act of 1934 (as alleged in the Securities Class Actions, the "Securities Claims"):

    a. *Healy v. Kryeziu et al.*, Superior Court of California Los Angeles County, No. BC624918 (the "*Healy* Action"), in which Norman Healy is the plaintiff;

    b. *Torres v. Kryeziu et al.*, Superior Court of California Los Angeles County, No. BC629838 (the "*Torres* Action," and together with the *Healy* Action, the "California Actions"), in which George Torres is the plaintiff (together with Mr. Healy, the "CA Plaintiffs"); and

    c. *Springer v. Code Rebel Corp., et al*, United States District Court for the Southern District of New York (the "NY Court"), No. 16-cv-3492 (the "*Springer* Action"), in which the lead plaintiffs are Adrian Ybarra and William Tran (the "NY Plaintiffs"

and together with the CA Plaintiffs, the "Plaintiffs").

6. The Settling Defendants have denied any liability for the Securities Claims and the Trustee Claims, and asserted certain defenses. The Settling Defendants, the Trustee, and the Plaintiffs (together, the "Parties") entered into good faith, arm's length negotiations, and reached an agreement to resolve the Trustee Claims and the Securities Claims pursuant to the terms and conditions set out in a certain *Settlement Agreement and Release* (the "Settlement Agreement"),[1] subject to Bankruptcy Court approval and to certain other Conditions Precedent (as defined in the Settlement Agreement). A copy of the Settlement Agreement is attached to this Motion as Exhibit "A" and incorporated herein by reference.

7. The Settlement Agreement includes the following principal terms:[2]

a. Settlement Amount. Within twenty (20) business days of the later of the execution of the Settlement Agreement and receipt by the Settling Defendants of all necessary W-9 forms, the Settling Defendants shall make a settlement payment in the collective sum of one million three hundred thousand U.S. dollars ($1,300,000.00) (the "Settlement Amount") via wire transfer in US Dollars to the order of Strategic Claims Services, as escrow agent. [Settlement Agreement at ¶5].

b. Allocation of the Settlement Amount. The Plaintiffs and the Trustee agree to allocate the Settlement Amount between them as follows: $1,000,000 to the Plaintiffs (the "Class Settlement Amount") on behalf of the Settlement Class (as defined in the Settlement Agreement) and $300,000 to the Trustee. The Settlement Amount represents the total compensation to be paid by the Settling Defendants in connection with the settlements embodied in the Settlement Agreement (together, the "Settlement"). Within three (3) days of the escrow agent's receipt of the Settlement Amount, the Plaintiffs and the Trustee shall direct the escrow agent to transfer: (i) $300,000, plus a proportionate share of any interest earned on the Settlement Amount, to the Trustee; and (ii) $1,000,000, plus a proportionate share of any interest earned on the Settlement Amount to an interest bearing escrow account to be controlled by the Plaintiffs' Counsel (the "Class Settlement Fund"). The Plaintiffs' Counsel shall prepare a plan (the "Plan of Allocation") for allocating the Class

---

[1] Capitalized terms used in this Motion and not otherwise defined herein shall have the meanings provided in the Settlement Agreement.
[2] This Motion contains a summary of certain terms of the Settlement Agreement, and does not set out all of the terms. The complete terms of the Settlement are set out in the Settlement Agreement itself (together with any external documents incorporated into the Settlement Agreement by reference). The Settlement Agreement itself should be consulted for the complete terms of the Settlement. To the extent of any inconsistency between this Motion and the Settlement Agreement, the Settlement Agreement shall govern.

Settlement Fund amongst the members of the Settlement Class (the "Settlement Class Members"), and following the occurrence of all necessary conditions, a Claims Administrator shall administer and distribute the Class Settlement Fund pursuant to the Plan of Allocation and the terms and instructions set out in the Settlement Agreement. For the avoidance of doubt, any Plan of Allocation shall not be part of the Settlement Agreement. [Settlement Agreement at ¶¶6-7].

c. The Settlement Class. Within twenty (20) business days of the execution of the Settlement Agreement, the NY Plaintiffs' Counsel shall amend the complaint in the *Springer* Action to: (i) redefine the class in the *Springer* Action pursuant to the class definition in paragraph 8(a)(i) of the Settlement Agreement (the "Settlement Class") (i.e. to broaden the definition to include all potential holders of Securities Claims, including the CA Plaintiffs); (ii) name all Settling Defendants as defendants; and (iii) include all Securities Claims asserted against any Settling Defendants in any of the Securities Class Actions (the "Amended Claims"). The Settlement Agreement constitutes a stipulation by the Parties to certification of the Settlement Class, but solely for settlement purposes. [Settlement Agreement at ¶8(a),(b)].

d. Preliminary Approval Order. Within twenty (20) business days of the execution of the Settlement Agreement, the NY Plaintiffs' Counsel shall file a motion with the NY Court for an order (the "Preliminary Approval Order") granting conditional certification of the Settlement Class for settlement purposes, preliminary approval of the settlement of the Securities Claims and the Amended Claims pursuant to the Settlement Agreement, and approval of a form and method of providing notice to the Settlement Class as required by applicable law (the "Notice Procedure"). The proposed Preliminary Approval Order shall further set a date for a Final Fairness Hearing, at which the NY Court will determine whether the requirements for certification of the Settlement Class for settlement purposes have been met, whether the proposed settlement contained in the Settlement Agreement should be finally approved, whether the award of fees and expenses to the Plaintiffs' Counsel should be approved, whether the Plan of Allocation should be approved, and whether a final judgment should be entered dismissing the *Springer* Action on the merits and with prejudice against the Plaintiffs and members of the Settlement Class. [Settlement Agreement at ¶8(c)].

e. Final Approval Order and Judgment. Upon the NY Court's entry of the Preliminary Approval Order, the Plaintiffs' counsel, with cooperation from the Settling Defendants, shall take all necessary steps to obtain an order from the NY Court (the "Final Approval Order and Judgment") granting final certification of the Settlement Class for settlement purposes, granting final approval of the settlement of the Securities Claims and the Amended Claims on the terms set forth in the Settlement Agreement, entering the Class Bar Order (as defined below), and dismissing the *Springer* Action against the Settling Defendants with prejudice. [Settlement Agreement at ¶8(d)].

f. Notice Procedure and Opt-Out Rights. In connection with seeking the Final Approval Order and Judgment, the Plaintiffs' counsel shall be responsible, *inter alia*, for

4

implementing the Notice Procedure pursuant to the requirements set out in the Settlement Agreement. *Inter alia*, the Plaintiffs' counsel shall mail a packet to each Settlement Class Member including notice of the Settlement, opt-out instructions, and a form for submitting a claim, and shall publish notice of the Settlement in *Investor's Business Daily* and on *Global Newswire*. If more than a certain percentage of members of the Settlement Class timely request exclusion from the Settlement Class, as set forth in a supplemental agreement entered into contemporaneously with this Settlement Agreement (the "Opt-Out Conditions"), then the Settling Defendants may terminate this Settlement Agreement.[3] The Opt-Out Conditions shall be deemed satisfied unless all Settling Defendants give written notice of termination to all Parties in accordance with the provisions in the supplemental agreement. [Settlement Agreement at ¶9].

g. Costs of Notice and Administration of Settlement. All expenses incurred in connection with the administration of the Settlement, including, among other things, the costs associated with the Notice Procedure, locating Settlement Class Members, processing claims submitted by Settlement Class Members, and distributing funds to Settlement Class Members (all together, the "Notice and Administrative Expenses") shall be paid exclusively from the Class Settlement Fund, and not from the Trustee's portion of the Settlement Amount. [Settlement Agreement at ¶12].

h. Cooperation of Settling Defendants and/or Trustee with Plaintiffs' Counsel. To assist the Plaintiffs' Counsel in their provision of notice to the Settlement Class Members, the Settling Defendants and/or the Trustee (at no cost to the Trustee or the Estate) will cooperate in obtaining from the Debtor's records, information concerning the identities of Settlement Class Members, including any names and addresses of Settlement Class Members and nominees or custodians that exist in such records (the "Settlement Class Information"). Settling Defendants and/or the Trustee shall use reasonable efforts to obtain and to provide, or cause to be provided to Plaintiffs' Counsel or the Claims Administrator, at no cost to the Plaintiffs, as soon as reasonably possible after the NY Court signs the Preliminary Approval Order, quarterly transfer records in electronic searchable form, such as Excel, containing the Settlement Class Information. [Settlement Agreement at ¶10(c)].

i. Cooperation of Settling Defendants with Trustee. Each of the Settling Defendants agrees to provide reasonable cooperation to the Trustee and the Estate in connection with remaining case administration issues, including claim objections, by responding to the best of their abilities to any questions that they may be asked by the Trustee, subject to the terms of the Settlement Agreement. [Settlement Agreement at ¶22].

j. Conditions Precedent. The effectiveness of the Settlement Agreement is subject to the Conditions Precedent, which include:

   i. Negotiation and execution by all parties of the Settlement Agreement;

---

[3] The term "Settlement Agreement" used in this Motion shall include the supplemental agreement.

5

    ii. Approval of the settlement of the Trustee Claims by the Bankruptcy Court on the terms set forth in the Settlement Agreement, including without limitation, approval of the use of the Debtor's insurance as a source of funding for the Settlement ("<u>Bankruptcy Court Approval</u>");

    iii. Approval by the NY Court of the settlement of the Securities Claims and Amended Claims on the terms set forth in the Settlement Agreement, including preliminary approval, certification of the Class for settlement purposes only, dismissal with prejudice of all claims in the *Springer* Action against the Settling Defendants, and final approval as set forth in the Settlement Agreement ("<u>Settlement Class Approval</u>");

    iv. Entry of the Class Bar Order by the NY Court; and

    v. Satisfaction of the Opt-Out Conditions.

[Settlement Agreement at ¶24].

    8. The Settlement Agreement provides mutual releases among the Parties, including *inter alia*: (i) a release by the Trustee of the Settling Defendants and their insurers from the Released Trustee Claims (as defined in the Settlement Agreement), which include without limitation all claims related to the Debtor, including but not limited to the Trustee Claims; (ii) a release by the Plaintiffs, on behalf of themselves and the Settlement Class, of the Releasees (as defined in the Settlement Agreement; a group which includes the Settling Defendants, the Trustee, the Estate, and their insurers) from the Released Plaintiffs' Claims (as defined in the Settlement Agreement), which include without limitation all claims related to the Securities Claims, the Amended Claims, as well as any and all claims the were or could have been asserted, arising from or relating to any activities of the Debtor, or in connection with the Settling Defendants' activities as directors and/or officers of the Debtor; and (iii) a release by the Settling Defendants of the Trustee, the Estate, and the Trustee's bankruptcy counsel from all claims that they may hold against the Trustee, the Debtor, the Estate, and/or the Trustee's bankruptcy

counsel.[4] [Settlement Agreement at ¶¶14, 16, 21].

9. In addition, the Settlement Agreement contains an explicit release by the Trustee of all claims with respect to the Policy and the proceeds of the Policy, and provides that the Trustee shall request that the Bankruptcy Court authorize Lloyds to pay any remaining proceeds to defend and indemnify the Settling Defendants in accordance with the terms of the Policy. The Trustee is including this request in the instant Motion. [Settlement Agreement at ¶20].

10. In addition, the Settlement Agreement provides that the Plaintiffs shall request that the NY Court enter a bar order (the "Class Bar Order"), *inter alia*, permanently barring and enjoining: (i) Settlement Class Members and anyone purporting to act on their behalves from bringing or participating in any action against the Releasees related to the Released Plaintiffs' Claims; and (ii) any and all claims for contribution arising out of any Released Plaintiffs' Claim, whether by any person or entity against any of the Settling Defendants, or by any of the Settling Defendants against any person or entity. However, the Class Bar Order shall not apply to any claim for insurance coverage with respect to the conduct at issue in the *Springer* Action. [Settlement Agreement at ¶18].

11. In addition, the Settlement Agreement provides that the Trustee shall request that the Bankruptcy Court enter a permanent bar order (the "Bankruptcy Bar Order") providing as follows:

> Upon payment of the Class Settlement Fund to the Authorized Claimants pursuant to paragraph 10 of the Settlement Agreement, the Trustee and the Estate, and all other persons that hold, have held or may hold a claim or other debt or liability or interest or other right of an equity holder, against, in, or relating to the Debtor or its estate, are permanently barred, enjoined, and restrained from commencing, prosecuting, continuing or asserting, either derivatively or on behalf

---

[4] The Settlement Agreement provides that the release by the Settling Defendants shall not apply to any claims or demands that any Settling Defendant may have relating to disputes as to the ownership of any asset included or sought to be included in the Estate. The Trustee reserves all rights, claims, and defenses with respect to any dispute raised by any Settling Defendants regarding the ownership of any such asset.

of themselves, in any court, arbitration proceeding, administrative agency, or other forum in the United States of America or elsewhere, any actions, causes of action, claims, counterclaims, cross-claims, suits, proceedings, damages, punitive damages, costs, expenses and attorneys' fees, demands and liabilities of any kind and nature, whether known or unknown, accrued or unaccrued, in law, equity or otherwise, that are based upon, arise out of, or relate to the Released Trustee Claims, against the Settling Defendants.

[Settlement Agreement at ¶19]. The Settlement is not contingent on the Bankruptcy Court entering the Bankruptcy Bar Order. The Trustee is including a request for entry of the Bankruptcy Bar Order in the instant Motion.

## Summary of Relief Requested

12. By this Motion, the Trustee requests that the Bankruptcy Court enter of an order: (i) authorizing the Trustee to enter into the Settlement Agreement, and to take any actions necessary to carry out the terms thereof; (ii) approving the settlement of the Trustee Claims pursuant to the terms and conditions of the Settlement Agreement; (iii) authorizing Lloyds to pay and/or advance any remaining proceeds of the Policy to defend and indemnify the Settling Defendants in accordance with the terms of the Policy and without regard to any interest that the Trustee or the Estate might hold or have held in the Policy or its proceeds; (iv) including the Bankruptcy Bar Order; and (v) providing any other and further relief that may be appropriate.

## Applicable Authority

13. Bankruptcy Rule 9019 governs the approval of compromises and settlements, and provides as follows:

> On motion by the Trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019.

14. The settlement of time-consuming and burdensome litigation, especially in the

8

bankruptcy context, is encouraged and "generally favored." In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006); see also In re Penn Central Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) ("In administrating reorganization proceedings in an economical and practical matter it will often be wise to arrange the settlement of claims . . . .").

15. In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] [it]self of all facts necessary [to form] an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated, [and] estimate . . . the complexity, expense and likely duration of such litigation . . . all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." Penn Central, 596 F.2d at 1114; see also In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (describing the "ultimate inquiry to be whether the compromise is fair, reasonable, and in the interest of the estate").

16. The United States Court of Appeals for the Third Circuit has enumerated four factors that a court should consider in determining whether a compromise should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968)).

17. In assessing a request for approval of a settlement, a court should not substitute its own judgment for that of the trustee. The court is not to decide the numerous questions of law or fact raised by the litigation, but rather should canvas the issues to determine "whether the settlement fall[s] below the lowest point in the range of reasonableness." Cosoff v. Rodman (In

9

re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 22 (1983); see also World Health Alternatives, 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'") (quoting Penn Central, 596 F.2d at 1114).

## Analysis

A.  **The settlement of the Trustee Claims embodied in the Settlement Agreement meets the applicable standards under Rule 9019**

18. The settlement of the Trustee Claims pursuant to the terms of the Settlement Agreement meets the applicable standards under Rule 9019. As discussed below, each of the applicable Martin factors set forth above weighs in favor of approving the Settlement, and the Settlement is certainly in the best interest of the Estate.

19. While the Trustee believes that the Trustee Claims are certainly viable causes of action against the Settling Defendants, he recognizes that any recovery would be uncertain. The Trustee Claims involve complicated factual and legal issues regarding alleged breaches of the duty of loyalty and/or care, breaches of fiduciary duty, neglect of duties, abdication of duties, errors, misstatements and/or materially inaccurate statements, lack of good faith, the failure to act and/or state material facts known to Settling Defendants when such statements were necessary, and/or the failure to implement or otherwise follow adequate safeguards and controls. The issues, no matter how they may be decided by this Court or the NY Court, are such that the losing party or parties are likely to pursue appellate review. At best, the Trustee's probability of success on the merits would be highly uncertain.

20. Given the factual and legal complexity of the issues raised by the Trustee Claims, any litigation would be protracted and expensive not only for the Estate, but also for the Settling

Defendants. Since the Settling Defendants are insureds under the Policy, protracted litigation may exhaust the Policy through payment of defense costs, leaving no source of recovery for the Estate even if the Trustee were ultimately victorious.[5] Moreover, the Settling Defendants would also incur significant costs in defending against the Securities Class Actions. The Settlement Agreement spares the Policy from these additional defense costs, as well as from the possibility of large awards against the Settling Defendants in the Securities Class Actions, which would threaten to completely exhaust the Policy. And without the Policy to look to, the Trustee may have difficulty collecting any award from the Settling Defendants.

21.     The proposed Settlement is certainly in the paramount interest of the Estate and its creditors. The Settlement avoids the delays and risks described above, in favor of a prompt and efficient resolution featuring an immediate injection of $300,000 into the Estate – which should be sufficient to allow the Trustee to pay all timely filed claims in the Debtor's bankruptcy case in full.

22.     The Trustee notes that other ancillary aspects of the Settlement Agreement are favorable to the Estate as well. The Settlement Agreement requires the Settling Defendants to cooperate with the Trustee in the administration of the bankruptcy case, including with claims objections. This assistance could prove very helpful to the Trustee. In addition, the Settlement Agreement insulates the Trustee's portion of the Settlement Amount from all of the Plaintiffs' costs associated with obtaining the Final Approval Order and Judgment from the NY Court, and the administration and distribution of the Class Settlement Fund. The Trustee will incur no expenses in connection with the Class Settlement. With the exception of the duties described in paragraph 10(c) of the Settlement Agreement, the Trustee will not be responsible for performing

---

[5] Upon information and belief, the Policy has already been eroded by just under $1 million in defense costs incurred by the Settling Defendants to date.

any of the tasks associated with obtaining the Final Approval Order and Judgment and administering the Class Settlement Fund. Paragraph 10(c) provides that the Trustee will cooperate with the other Parties in obtaining the Settlement Class Information, and that he and/or the Settling Defendants will use reasonable efforts to obtain quarterly transfer records of the Debtor containing the Settlement Class Information. The Trustee does not believe that these duties will be burdensome. Moreover, the Settlement Agreement is clear that the Trustee is not obligated to incur any costs in connection with these duties.

23.     With respect to the allocation of the Settlement Amount between the Trustee and the Plaintiffs, the Trustee notes that the Estate's share of $300,000 should be sufficient to pay all timely filed claims in the Debtor's bankruptcy case in full. The Trustee believes that his split with the Plaintiffs is fair based on the parties' respective claims.

24.     In sum, the Trustee's proposed settlement meets the standards applicable to Rule 9019, and would certainly serve the best interest of the Estate. The settlement would eliminate the risk, cost, and delay of litigating the Trustee Claims, and would result in the Estate recovering sufficient funds to pay all timely filed claims in full. Accordingly, the Trustee submits that the Bankruptcy Court should approve the settlement of the Trustee Claims as set out in the Settlement Agreement.

### B.     The Trustee requests entry of the Bankruptcy Bar Order

25.     As part of the Settlement, the Trustee agreed to request that the Bankruptcy Court include the Bankruptcy Bar Order as part of the order providing Bankruptcy Court Approval. The Trustee has included the text of the Bankruptcy Bar Order at paragraph 5 of his proposed order granting this Motion, which he is filing with the Bankruptcy Court together with this Motion.

26. "Bankruptcy courts have authority to enter settlement bar orders." In re Tribune Co., 464 B.R. 126, 176 (Bankr. D. Del. 2011). As this court recently noted, "Bar orders are increasingly used to encourage partial settlement of litigation involving multiple defendants by barring contribution claims litigation against the settling defendants by the nonsettling defendants." Id. Here, the Bankruptcy Bar Order applies only to future actions against the Settling Defendants related to the Released Trustee Claims. By definition, the Released Trustee Claims are rights of action owned exclusively by the Estate, as opposed to any individual creditors, which the Trustee has exclusive standing to assert for the benefit of all creditors. Accordingly, the claims barred by the Bankruptcy Bar Order would be those belonging to the Trustee, as opposed to third parties.

27. Moreover, the Trustee believes that the Settling Defendants are the only possible targets of the Released Trustee Claims. Accordingly, the Trustee does not believe that any future claims could be brought against the Settling Defendants based on contribution or indemnity rights. But the Trustee notes that Delaware has adopted the Uniform Contribution Among Tortfeasors Law, 10 Del. C. § 6301 et seq., which provides for a reduction, to the extent of the released tortfeasor, of the injured person's damages recoverable against all the other tortfeasors, thus providing contribution-protection to persons affected by the bar order. So, even if future contribution or indemnity claims against the Settling Defendants did exist, the holders of such rights would be protected from having to bear a disproportionate share of the overall damages.

28. Accordingly, the Trustee requests that the Bankruptcy Court enter the Bankruptcy Bar Order, as set out in the Trustee's proposed order granting this Motion attached hereto.

### C.  The Trustee requests that the Bankruptcy Court authorize Lloyds to pay remaining Policy proceeds to the Settling Defendants

29. Finally, the Trustee requests that the Bankruptcy Court authorize Lloyds to pay

and/or advance any remaining proceeds of the Policy to defend and indemnify the Settling Defendants in accordance with the terms of the Policy and without regard to any interest that the Trustee or the Estate might hold or have held in the Policy or its proceeds.

30. This request should be without controversy, as the Policy contains a "priority of payments" provision in favor of the "side A" coverage. In other words, Lloyds is required to pay in full the claims of the officers and directors prior to paying any claims of the Debtor. Under these circumstances, courts hold that the proceeds of a D&O Policy belong to the officers and directors, and not to the entity. See, e.g., In re Downey Fin. Corp., 428 B.R. 595, 608 (Bankr. D. Del. 2010) (holding that proceeds payable to individual directors/officers were not property of entity's bankruptcy estate, where entity's D&O policy provided that proceeds payable to entity were subordinate to proceeds payable to individual directors/officers). Moreover, the Trustee's portion of the Settlement Amount is sufficient to allow him to pay all timely filed claims in full in the Debtor's bankruptcy case. Following the Settlement, the Trustee would have no need to look to the Policy.

31. Accordingly, the Trustee requests that the Bankruptcy Court authorize Lloyds to pay and/or advance any remaining Policy proceeds to the Settling Defendants as provided in the Settlement Agreement.

## Notice and Conclusion

32. The Trustee will serve notice of this Motion on: (i) the Debtor; (ii) the Office of the United States Trustee; (iii) the Settling Defendants; (iv) the Plaintiffs; (v) Lloyds; (vi) all parties that have filed proofs of claim in this case; and (vii) all parties who have requested such notice pursuant to Federal Rule of Bankruptcy Procedure 2002 as of this date.

WHEREFORE, the Trustee respectfully requests that the Bankruptcy Court enter an order substantially in the form attached: (i) authorizing the Trustee to enter into the Settlement Agreement, and to take any actions necessary to carry out the terms thereof; (ii) approving the settlement of the Trustee Claims pursuant to the terms and conditions of the Settlement Agreement; (iii) authorizing Lloyds to pay and/or advance any remaining proceeds of the Policy to defend and indemnify the Settling Defendants in accordance with the terms of the Policy and without regard to any interest that the Trustee or the Estate might hold or have held in the Policy or its proceeds; (iv) including the Bankruptcy Bar Order; and (v) providing any other and further relief that may be appropriate.

Dated: May 16, 2017

**COZEN O'CONNOR**

*/s/ Simon E. Fraser*
Mark E. Felger (No. 3919)
Simon E. Fraser (No. 5335)
1201 N. Market Street, Suite 1001
Wilmington, DE 19801
Telephone: (302) 295-2000
Fax: (302) 295-2013
Email: mfelger@cozen.com
         sfraser@cozen.com

*Attorneys for Jeoffrey L. Burtch, Chapter 7 Trustee for the Estate of Code Rebel Corporation*